THE SENECA MINING COMPANY v. GILBERT R. OSMUN, SECRETARY OF STATE.

*Constitutional amendments—Time of taking effect—Corporations—Continuance of existence.*

1. Under section 1 of article 20 of the Constitution, which provides for the submission of proposed constitutional amendments at the next *spring* or autumn election, such amendments take effect from the time of their ratification by the popular vote.

2. Act No. 129, Laws of 1889, authorizing mining and manufacturing corporations whose corporate existence is about to terminate by limitation of law to direct its continuance for a period not exceeding thirty years, is a valid enactment.

*Mandamus.* Submitted April 22, 1890. Granted July 2, 1890, and opinion filed October 31, 1890.

Relator applied for *mandamus* to compel the respondent to file its articles of association in renewal of its corporate existence. The facts are stated in the opinion.

*T. L. Chadbourne,* for relator.

*B. W. Huston,* Attorney General, for respondent.

LONG, J. The relator is a mining corporation organized under the laws of Michigan. Its original articles of association bear date March 23, 1860, and were filed in the office of the county clerk of Keweenaw county May 11, 1860, and in the office of the Secretary of State April 10, 1860, and it was therein provided that its term of existence should be 30 years, and it has ever since been a mining corporation under the laws of Michigan.

On March 19, 1890, there was filed for record with the clerk of said county of Keweenaw, that being the county where the corporation carried on its business, duplicate

articles of association of the Seneca Mining Company, bearing date January 24, 1890, signed by the president and secretary of the company, and acknowledged before a proper acknowledging officer. The eighth article reads as follows:

" Art. 8. The term of existence of this corporation shall be thirty years from the expiration of its former term, which former term will expire, as is believed, on the 23d day of March, 1890."

These articles of association were executed under the provisions of Act No. 129, Laws of 1889, which is an amendment to Act No. 16, Laws of 1882, entitled " An act to provide for renewing the incorporation of companies organized for mining and manufacturing purposes," as amended by Act No. 37, Laws of 1887, which two lat·ter acts received a construction by this Court in the case of *Attorney General v. Perkins,* 73 Mich. 303 (41 N. W. Rep. 426). We there held that these acts did not apply to corporations whose periods of existence were, in the articles of association, limited to 30 years.

On March 17, 1890, another of the duplicate articles of association of the Seneca Mining Company, executed under Act No. 129, Laws of 1889, was presented to the Secretary of State, with the request that he file and record the same, which he refused to do, for the reason that the original articles of association of the mining company provided for a corporate existence of 30 years, and that the amendment of 1889, authorizing an extension of the period of corporate existence of such corporation, is invalid. The Seneca Mining Company asks for a *mandamus* to compel the Secretary of State to file and record its articles of association, whereby the corporate term of its existence is extended 30 years from March 23, 1890.

A constitutional amendment was submitted to the elect-

ors at the April election of 1889, and was adopted by them as follows:

"Art. 15, § 10. No corporation, except for municipal purposes, or for the construction of railroads, plank-roads, and canals, shall be created for a longer time than thirty years; but the Legislature may provide, by general laws applicable to any corporation, for one or more extensions of the term of such corporation while such term is running, not exceeding thirty years for each extension, on consent of not less than a two-thirds majority of the capital of the corporation, and by like general laws for the corporate reorganization, for a further period not exceeding thirty years, of such corporations whose terms have expired by limitation, on consent of not less than four-fifths of the capital: *Provided,* That in cases of corporations where there is no capital stock, the Legislature may provide the manner in which such corporations may be reorganized." Laws of 1889, p. 455.

Without the authority conferred upon the Legislature by this amendment to the Constitution, the Legislature would have no authority to authorize the extension of corporate existence of corporations such as this, as was held in *Attorney General v. Perkins,* 73 Mich. 303. The important question which is therefore presented is, when did the amendment adopted by the electors in April, 1889, take effect as a part of the Constitution? We must look to that instrument for a reply. Article 20 reads as follows:

" SECTION 1. Any amendment or amendments to this Constitution, may be proposed in the Senate or House of Representatives. If the same shall be agreed to by two-thirds of the members elected to each House, such amendment or amendments shall be entered on the journals respectively, with the yeas and nays taken thereon, and the same shall be submitted to the electors at the next [spring or autumn election thereafter, as the Legislature shall direct], and if a majority of electors, qualified to vote for members of the Legislature, voting thereon, shall ratify and approve such amendment or amendments, the same shall become part of the Constitution.

"SEC. 2. At the general election to be held in the year one thousand eight hundred and sixty-six, and in each sixteenth year thereafter, and also at such other times as the Legislature may by law provide, the question of the general revision of the Constitution shall be submitted to the electors qualified to vote for members of the Legislature; and in case a majority of the electors so qualified, voting at such election, shall decide in favor of a convention for such purpose, the Legislature, at the next session, shall provide by law for the election of such delegates to such convention. All the amendments shall take effect at the commencement of the year after their adoption."

This is all there is in the Constitution about amendments, and when they shall take effect. It is contended on the part of the respondent that the clause, "All the amendments shall take effect at the commencement of the year after their adoption," added to section 2, has reference solely to the amendments specified in section 1, and that section 2 has no reference to amendment or amendments of the Constitution, but to the submission of the question of revision each sixteenth year, or at such times as the Legislature may by law provide; and from this it is contended that the amendment passed at the April election in 1889 only took effect on January 1, 1890. If this is the construction to be given to the last clause of section 2, Article 20, of the Constitution, as it now stands, and that clause is still in force, since the amendment of 1876, and hereinafter referred to, then the act of 1889, under which relator claims the right to file articles of association, is wholly void; for, if the law-making power is prohibited from enacting a law, and in disregard of such prohibition it goes through the forms of enacting a law, such enactment is of no more force or validity than a piece of blank paper, and is utterly void, and power subsequently conferred upon the Legislature by an amendment of the Constitution does not have a

retroactive effect, and give validity to such void law. *Dewar v. People*, 40 Mich. 401; *Mt. Pleasant v. Vanspice*, 43 Id. 361 (5 N. W. Rep. 378); Cooley, Const. Lim. 188.

The history of this article of the Constitution in the convention of 1850 is as follows: First there was a committee appointed upon the subject of amendments to the Constitution. This committee reported substantially the article found in the Constitution of 1835, and this was referred to the committee of the whole. Afterwards, a substitute was offered substantially as article 20 now is, except the change made in section 1, in 1876, and the last clause of section 2, which was adopted in committee, and referred back to the convention, and placed upon the order of third reading. On third reading, amendments were made in section 2 so as to require the question of revision to be submitted every sixteenth year after 1866. The article, as amended, was passed by the convention, and referred to the committee on arrangement and phraseology. This committee reported the article back to the convention, with these words added to section 2:

"All the amendments shall take effect at the commencement of the political year after their adoption."

The amendment was concurred in by the convention, and referred to the committee on enrollment, and the article was passed as a part of the Constitution by the convention. It does not appear, from the convention debates of 1850, that question was raised or debate had upon the subject of the amendment made by the committee on phraseology. This article of the Constitution remained unchanged until the Legislature, by joint resolution No. 17, in 1861, proposed an amendment to section 2 by omitting the word "political" before the word "year,"

82 MICH.—37.

where it last occurs, so that this clause would read,—

"All amendments shall take effect at the commencement of the year after their adoption."

This amendment was ratified and adopted by the electors at the general election held in 1862. Just what the effect of this amendment was, is not very apparent, as, by section 1 of the article, amendments were still required to be submitted to the electors at the general election, which occurred only biennially, and the commencement of the year next after their adoption would still place the time of the taking effect of the amendments beyond the time when the Legislature would have adjourned its session, so that no legislation could be had thereunder until the meeting of the Legislature two years thereafter, unless an extra session was called.

Up to 1876, a period of 25 years from the adoption of the Constitution of 1850, no one ever contended that an amendment to the Constitution took effect until the commencement of the year after its adoption; the last clause of section 2 undoubtedly being construed as having referred solely to the amendments specified in section 1 of that article. During this time 21 amendments were submitted to the people, of which 8 were rejected and 13 adopted. No legislation was attempted under such amendment, however, during this time, until after the amendment took effect after the commencement of the year following. Amendments were proposed and adopted by the Legislatures of 1865, 1869, 1870, 1871, and 1874, and submitted to the electors, who voted upon them at the biennial elections following these years, and those adopted were not regarded as taking effect until January 1 following. By joint resolution No. 29 of 1875, the Legislature, however, adopted an amendment to section 1 by striking out the word "general" before the word "election," and

substituting therefor the words, "spring or autumn election thereafter, as the Legislature shall direct." At the general election held in 1876, this amendment was ratified and approved by the voters, and this is the present condition of the article, and it stands as above quoted.

Whatever interpretation may have been given this article by the Legislature, or others acting under it, prior to the amendment of 1875, which was ratified by the electors, so that the vote of the electors upon amendments could be taken at the spring election, or in the autumn, it is very evident that it was the intention of the Legislature of 1875, so to change the time when the amendments should take effect that legislation could at once be had under the change so made in the Constitution. If the time of the taking effect of these amendments was still postponed until the commencement of the year following, then the submission of such amendments to the electors for their approval might as well have been at the general election as in the spring, and nothing would have been gained by a submission at an earlier period. It is quite apparent that the very purpose, and the only object, to be accomplished by this change in section 1, was to enable the Legislature, during its sitting, to enact laws to meet the object sought to be accomplished by a change in the fundamental law; that the Legislature might submit an amendment or amendments to the Constitution at the spring election, and, if ratified by the electors, the Legislature being then in session could, by appropriate legislation, carry out the object sought in the change. It must be held that the amendment took effect from the time of the ratification by the popular vote.

It follows that Act No. 129, Laws of 1889, is valid, and the writ of *mandamus* must issue as prayed.

The other Justices concurred.