THE PEOPLE, EX REL. ATTORNEY GENERAL, V. MARSDEN
C. BURCH.

*Constitutional law—Circuit judge—Vacancy—Appointment by Governor—Election—Legislative journals—Correction of errors —Amendment of bill—Concurrence of other house—Immediate effect.*

1. It was the plain intent of the constitutional amendment of 1889, empowering the Legislature to provide for the election of more than one circuit judge in the judicial circuit composed of the county of Kent, to place such additional judge under the provisions of the Constitution and laws of the State applicable to existing circuit judges, and that his term of office should be limited and governed by the Constitution, and that his successor should be chosen at the same time and in the same manner as the other circuit judges.

2. It was competent for the Legislature, at once upon the adoption of the amendment, to create the office of such additional circuit judge, and to prescribe his duties, which office became vacant as soon as created, whether the Legislature so declared or not, and which vacancy the Legislature had the power to authorize the Governor to fill provisionally, by appointment, until the next general election.

3. Act No. 97, Laws of 1889, creating an additional circuit judge in the judicial circuit composed of the county of Kent, and declaring the office vacant, and providing for the filling of such vacancy by appointment by the Governor, *in so far* as it undertakes to fix the term of the appointee, and to declare that it shall not expire until December 31, 1893, is unconstitutional, his constitutional term only extending to the next general election, or until his successor was elected and qualified.

4. Under a resolution of the State Senate dispensing with the reading of the daily journal for the session, and authorizing the secretary to make all necessary corrections in the journal from day to day, he is held authorized to correct an entry which by mistake stated that the vote taken on the passage of a bill was reconsidered, by stating at the close of the journal, and on the page before his certificate, under the head of "*Errata* in the Record of Bills," that the vote reconsidered

was that by which the Senate had concurred in certain House amendments to the bill, which correction might be so made at any time prior to the final adjournment.

5. In such a case, where it does not affirmatively appear at what time the secretary made the correction, it will be presumed to have been made on or before the date of his certificate, and, if the final adjournment was had on that day, it will also be presumed to have been made before such adjournment, and that it was authorized by the Senate, and that the true journal entry of the proceeding is as corrected by the "*errata.*"

6. Where a Senate bill, after having passed that body and been given immediate effect, is amended in the House, and there given immediate effect, a concurrence by the Senate in such amendments must be considered as a concurrence in the order that they take immediate effect, and a separate vote by the Senate that the bill *as amended* take immediate effect is unnecessary.

*Quo warranto.* Submitted January 8, 1891. Writ dismissed January 23, 1891.

Information in the nature of *quo warranto* to test title of respondent to the office of circuit judge for the county of Kent. The facts are stated in the opinion.

*Norris & Norris,* for relator.

*Butterfield & Keeney* and *Taggart, Wolcott & Ganson,* for respondent.

MORSE, J. This is a proceeding in the nature of a *quo warranto,* to test the right of the respondent to hold the office of a judge of the circuit court for the county of Kent.

At the general election in the spring of 1889 an amendment to article 6, § 6, of the Constitution was adopted, providing that the Legislature might provide for the election of more than one circuit judge in the judicial circuit in which the county of Kent is or may be situated. The amendment also provided that it should take effect from the time of its adoption. The Legislature, then being in

session, thereupon passed Act No. 97, Laws of 1889, creating the office of an additional circuit judge for the seventeenth judicial circuit, composed of the county of Kent, and declared such office vacant from the time the act took effect, and provided that the vacancy thus declared should be filled by appointment by the Governor.

"The person so appointed to hold his office provisionally, from the time of his appointment, until the general election for township officers in the spring of 1893, or until his successor shall be elected; and the term for which said judge shall be appointed shall expire December 31, 1893."

This act was given immediate effect, and was approved by the Governor May 17, 1889. The Governor appointed the respondent as such circuit judge June 1, 1889, and he has since exercised the duties of such office.

The first contention of the relator is that the act was never properly or constitutionally passed by the Legislature. The history of the bill, as far as this question is concerned and necessary to be shown in its consideration, is as follows: The bill was introduced in the Senate February 16, 1889, and referred to the committee on judiciary. May 2, 1889, said committee reported the bill with amendments, and recommended its passage. The rules were suspended, and the bill passed and ordered to take immediate effect. It then went to the House, and was there amended, passed, and given immediate effect. May 3, 1889, the Senate, on its return from the House, concurred in the House amendments, and referred the bill to the committee on engrossment and enrollment. 1 Senate Journal, p. 797. May 7, 1889, the House requested the Senate to return the bill. The Senate thereupon ordered the committee to return it to the Senate, which having been done, the face of the journal as then made up shows the following proceedings:

"Mr. Wesselius moved to reconsider the vote by which the Senate passed the bill, which motion prevailed. The question being on the passage of the bill, on motion of Mr. Wesselius, the bill was ordered returned to the House." Id. p. 811.

At the close of the Senate journal on the page before the certificate of the secretary, which bears date July 3, 1889, is a page headed—

"Errata in the Record of Bills. (Minor errors are not noted; only such as affect the record of bills in their consideration by the Senate. The corrections are all made upon the authority of the records kept by the bill clerk, under the supervision of the secretary.) * * * On page 811, lines ten and eleven, the vote reconsidered was not the passage of the bill, but the vote by which the Senate concurred in the House amendments to the bill on page 797."

After the proceedings taken as shown on page 811 of the Senate journal, the bill was returned to the House, and there further amended, returned again to the Senate, the House amendments there concurred in, the bill engrossed and enrolled, signed by the proper officers of both Houses, and approved by the Governor.

The defect claimed in the passage of the bill is that the face of the Senate journal shows, on page 811, that the vote by which the Senate passed the bill was reconsidered, leaving it standing before that body as if it had never been passed; that in that shape it was returned to the House, and, when it came back to the Senate, the House amendments were concurred in, but the bill itself was not passed by the Senate, and therefore failed to become a law; that the secretary had no authority to make the correction found in the " errata." It does not affirmatively appear at what time the secretary made this correction of the record, but it is to be presumed, from the place where the errata is found, that he made it on or before the date of his certificate, July 3, 1889, as the

certificate follows the correction. The Legislature adjourned *sine die* upon that date, and, as every intendment is to be taken in favor of the correctness of legislative action, it must also be presumed that the correction was made before the adjournment of the Senate. If it was done, as we must presume that it was, before the final adjournment of the Legislature, we must also presume that it was authorized by the Senate, and that the true journal entry of the proceedings is as corrected by the "*errata.*"

It also appears from the journals of the Senate that, on the first day of the session of the Legislature, the following resolution was adopted:

"Resolved that the reading of the daily journal be dispensed with for this session, and that the secretary be authorized to make all necessary corrections in the journal from day to day."

While this may not have been the best practice in order to secure absolute verity of the record, there is no prohibition of such practice to be found in the Constitution, the only provision being that—

"Each House shall keep a journal of its proceedings, and publish the same, except such parts as may require secrecy." Article 4, § 10.

Under this resolution, the secretary of the Senate was authorized to make this correction at any time before the final adjournment. We have repeatedly held in this State that it is competent for the courts to go behind the authenticated act, and to examine the journals of the Legislature, to ascertain whether or not the same was constitutionally passed; but where this is permitted the whole current of authority is one way as to the presumption being in favor of the validity of the act. This presumption in favor of the legality of legislative action in the passage of a bill is so strong that it has always

been held that the evidence found in the journals must be of an affirmative character, and so clear and satisfactory as to be conclusive, in order to overthrow the *prima facie* correctness of legislative action, which attaches to every act which has been duly authenticated by the proper authorities. *Hart v. McElroy*, 72 Mich. 450, and cases there cited. And the record as it appears upon the face of the journal, taken as a whole, without the *errata*, to one at all acquainted with legislative practice, shows clearly enough that the entry upon page 811 is a mistake, and that the "*errata*" is correct. The proper motion to have been made at that stage of the proceedings was, as appears in the *errata*, to reconsider the vote by which the Senate had concurred in the House amendments. Then it could have been properly sent back to the House as it was, and all the subsequent proceedings, as shown by the journal, would have been regular and usual. But if the vote on the passage of the bill had been reconsidered, being a Senate bill originally, it could not have properly been returned to the House. There is no doubt in our minds, from an examination of the whole record, that the correction by the secretary of the Senate sets out the action of the Senate as it was taken at the time, and that the mistake is upon the face of the journal. It follows that the bill was properly passed.

2. It is further contended that the respondent was appointed before the act took effect. It is shown by the journal that the Senate when concurring in the House amendments made no separate order that the bill as amended should take immediate effect. This was not necessary. When the bill was originally passed by the Senate, it was ordered to take immediate effect. The bill as amended by the House was by that body ordered also to take immediate effect. This being originally a Senate

bill, it was not necessary, after it had once been given immediate effect, and the action of the Senate thereafter was confined to concurrence in the House amendments which had by that branch of the Legislature been ordered to take immediate effect, for the Senate again to order by a separate vote that the bill as amended should take immediate effect. Concurrence in the action of the House as to the amendments must be considered as a concurrence in the order that such amendments take immediate effect. And this has been, we think, the uniform practice of the Legislature in such cases.

3. It is further contended that the Constitution does not authorize the Legislature to provide for the appointment of a circuit judge created under this amendment to the Constitution. The Constitution, Art. 6, § 6, as amended in 1889, provides that—

"The Legislature may provide for the *election* of more than one circuit judge   *   *   *   in the judicial circuit in which the county of Kent is or may be situated."

It is argued that this clause, standing alone, does not authorize the *appointment* of a circuit judge, and this may be conceded. But this section does not stand alone. It is now a part of the Constitution, and must be construed with the whole of that instrument. It is evident that the plain intent of this amendment was to put the additional judge of the Kent circuit, authorized to be created, under the Constitution and laws of the State applicable to the circuit judges then in existence, and that his term of office should be limited and governed by the Constitution, and his successor be chosen at the same time and in the same manner as other circuit judges. Article 6, § 20, of the Constitution, provides that—

"The first election of judges of the circuit court shall be held on the first Monday in April, 1851, and every

sixth year thereafter. Whenever an additional circuit is created, provision shall be made to hold the subsequent election of such additional judges at the regular election herein provided."

The manifest intent of the Constitution is that the judiciary shall be elected, and it would have been more in harmony with the spirit of the Constitution, if not with its letter, if the Legislature in creating this office had provided for the choice of such circuit judge by a special election. In such case, the person chosen would have held the office without question until December 31, 1893, and his successor would not have been chosen until the spring election of that year. We are of the opinion, however, that a special election is not absolutely necessary, and the Legislature may authorize the Governor to make a provisional appointment. Such has been the practice, and there is authority sustaining it, to which we will refer hereafter.

It was competent for the Legislature, at once upon the adoption of this amendment, to create the office of such additional judge, and to prescribe his duties. As soon as the office was created, a vacancy existed whether the Legislature so declared it or not. *Smith v. Askew*, 48 Ark. 87 (2 S. W. Rep. 350), and cases cited. The Constitution provides that—

"The Legislature may declare the cases in which any office shall be deemed vacant, and also the manner of filling the vacancy, where no provision is made for that purpose in this Constitution." Article 4, § 37.

Also that "when a vacancy occurs in the office of judge of the Supreme, *circuit*, or probate court it shall be filled by appointment of the Governor, which shall continue until a successor is *elected* and qualified. *When elected, such successor shall hold his office the residue of the unexpired term.*" Article 6, § 14.

In this case we find a vacancy existing as soon as the office was created, not only as the legitimate result of

such creation, but also by express declaration of the Legislature. Act No. 97, Laws of 1889. The Legislature had power to authorize the Governor to fill such vacancy provisionally, until the next general election, or to call a special election. Instead of the special election, the Legislature saw fit in the act creating the office to confer the power of appointment upon the Governor. A similar question was raised in *Attorney General v. Weimer*, 59 Mich. 580, 589, where a new county was created. The county officers provided by the Constitution are as clearly made elective officers under that instrument as are circuit judges, yet we held in that case that the Legislature had the power to authorize the Governor to fill the county offices, upon the organization of a new county, provisionally by appointment, to hold until the next general election for such offices. The same principle governs the case at bar.

But, while it was competent for the Legislature to bridge over the time intervening between the adoption of the act and the next general election, by providing for appointment by the Governor, the act, in so far as it undertakes to fix the term of such appointee, and to declare that such term shall not expire until December 31, 1893, is unconstitutional and void. The term of such appointee under the Constitution could not extend beyond the next general election, or until his successor was elected and qualified.

As before said, the manifest intention of that instrument is that the circuit judges shall be elected, and only in case of a vacancy occurring, or the creation of an additional circuit judge in the interim between the general elections, can a circuit judge be appointed by the Governor; and, at the next general election after such appointment, his successor can be and should be elected. In case no election was held, he would, however, con-

tinue in office until such time as his successor was duly elected and qualified. It is not necessary here to determine whether or not the spring election of 1890 was a general election; but a general election was held November 4, 1890, and any spring election at which Justices of the Supreme Court and Regents of the University are elected is necessarily also a general election, and is now so regarded. *Westinghausen v. People*, 44 Mich. 265. Article 6, § 20, of the Constitution, together with section 6 of the same article, construed with section 14, Art. 6, in relation to the filling of vacancies, make it manifest that it is contemplated that the additional judge shall also be elected, and the only authority for appointment that can be upheld is that of provisionally filling the vacancy caused by the creation of the office until the next general election shall occur.

In *People v. Lord*, 9 Mich. 227, the Constitution is referred to, and it is clearly enough there held that an act of the Legislature providing that, when a vacancy in a county office shall have been filled by appointment of the Governor, the appointee shall hold for the unexpired portion of the regular term, could not constitutionally apply to the office of judge of probate, as it would be in express violation of section 14, Art. 6, which is the same section relating to the filling of vacancies in the office of Supreme and circuit judge. Yet, under this act the respondent's term of office is extended from June 1, 1889, to December 31, 1893, passing two general elections in the fall, and at least two general spring elections, a period of over four and one-half years. If this act can be held valid to this extent, then an additional circuit might be created by the Legislature in the January after the regular spring election of circuit judges, and the Governor authorized to fill the office by appointment for

five years eleven months or more, thus depriving the people of the right to elect a circuit judge in effect for the full term of six years, in disregard of the plain intent and mandate of the Constitution.

But this excess in the fixing of the term of the Governor's appointee in Act No. 97, Laws of 1889, does not void the whole act or the appointment of the respondent. This part of the act can be treated as a nullity without destroying so much of the act as creates the office and provides for the appointment of an incumbent to fill the vacancy. The respondent was, therefore, legally appointed circuit judge, and is authorized to hold his office until his successor is legally elected and qualified. The information in this case was filed September 10, 1890, and at the time issue was joined the respondent was without doubt legally exercising and holding the office of circuit judge of the Kent circuit. The writ must therefore be dismissed.

On October 4, 1890, Allen C. Adsit applied to this Court for a writ of *mandamus* to compel the Secretary of State to send to the sheriff of Kent county a written notice stating that a vacancy existed in the office of additional circuit judge of Kent county, and that such vacancy would be supplied at the next general election, on November 4, 1890. October 7, 1890, we issued an order to the Secretary of State to show cause why the writ as prayed for should not be granted, returnable October 14, 1890. Upon the last-named day, the Secretary's answer was presented by the Attorney General, denying that any vacancy existed, on two grounds:

1. That the law creating the office (Act No. 97, Laws of 1889) provided that the term of the Governor's appointee should not end until December 31, 1893, or his successor be elected until the April election of the same year; and,—

2. That the act was never constitutionally passed authorizing such circuit judge to be appointed, setting up the *quo warranto* proceedings, and the same reasons alleged by relator in the case at bar why such act was void.

Upon the hearing of this application for *mandamus*, at first blush it seemed to us that there were grave doubts whether any such office as additional circuit judge of the Kent circuit existed, and it being then too late for the requisite statutory notice to be given, and not wishing to decide so important a question upon a motion for *mandamus*, when proceedings to determine the same matter were pending before us by *quo warranto*, we held that we would not determine the motion then, but hold it until the hearing in this case. Since that time, it is claimed that an election has been held for such office, and that November 4, 1890, Allen C. Adsit was duly elected as successor to the respondent, and an application made by him has been presented to this Court praying for the issue of a writ of *mandamus* to compel the Board of State Canvassers to canvass the votes polled at such election and returned to said board, and to declare said Adsit duly elected circuit judge in the place of respondent, and for the unexpired term ending December 31, 1893. These applications will be disposed of in a separate opinion.

The other Justices concurred.