THE PEOPLE, EX REL. JOSEPH M. FULLER, v. LUCIAN C. PALMER.

91 283
151 ¹413
f151 ¹414

*Elections—General and special—Judges of probate.*

1. The words "general election," used in the Constitution and statute, as applied to the office of judge of probate, can have no other meaning than the biennial election held in November, and an election at any other time to that office must be regarded as a special election; citing *People v. Lord,* 9 Mich. 226; Const. art. 6, § 21; How. Stat. §§ 2 (subd. 19), 137; *Westinghausen v. People,* 44 Mich. 265.

2. An appointee of the Governor to fill a vacancy in the office of judge of probate holds his office until a successor is elected and qualified, which election can only take place at some general election held in November, or at a special election, ordered by the Governor or the board of supervisors of the county, under the statute.

*Quo warranto.* Argued March 8, 1892. Decided April 8, 1892.

Information in the nature of *quo warranto* to test the right of respondent to hold the office of judge of probate of Montcalm county. Proceedings quashed. The facts are stated in the opinion.

*A. A. Ellis,* Attorney General *(Ellsworth & Rarden* and *John Lewis,* of counsel), for relator.

*Edward Cahill, N. O. Griswold, M. C. Palmer,* and *S. F. Kennedy,* for respondent.

LONG, J. This is a *quo warranto* proceeding commenced by the Attorney General in behalf of the people, on the relation of Joseph M. Fuller, to inquire into the right of the respondent to hold the office of judge of probate of Montcalm county.

The cause is at issue by proper pleadings, from which it appears that the judge of probate of that county, Edward P. Wallace, on November 12, 1890, resigned his office, and on the day following the respondent was appointed by the Governor to fill the vacancy. The respondent has exercised the duties of that office since his appointment. In the latter part of March, 1891, the several political parties of that county put in nomination candidates for the office of judge of probate, and the sheriff of the county gave public notice on March 13 that an election would be held on the 6th day of April next following, not only to fill the offices of Justice of the Supreme Court and two Regents of the University, but also to fill the office of judge of probate, "to fill the vacancy caused by the resignation of Edward P. Wallace." Due notice was also given of such election by the several township clerks and inspectors of election throughout the county. Joseph P. Shoemaker was the Democratic candidate, the relator, Joseph M. Fuller, was the Republican candidate, and John Stearns the Prohibition

candidate, at said election, each nominated by regularly called county conventions. Joseph M. Fuller, the relator, received a majority of all the votes cast, being over 300 votes over the combined vote of Shoemaker and Stearns. It also appears that the several candidates for judge of probate received as many votes at said election as the candidates for the office of Justice of the Supreme Court, less seven votes only.

It is claimed by the relator that the respondent, under the Constitution, could hold his office by appointment only until such a time as his successor should be elected and qualified, and that the election was a general one for the purpose of electing a judge of probate to fill the vacancy, of which notice was duly given; or that, if the notice was not such as the statue prescribes, the fact that the people regarded it as such, and voted in such large numbers, must make it a valid election, and one by which the relator is entitled to oust the respondent, and be himself given the office.

The respondent claims:

1. That he held the office of judge of probate by appointment from the Governor, which entitled him to the office until his successor was legally elected and qualified.

2. That his successor can only be elected at an election called in the manner provided by law,—that is, by order of the board of supervisors of his county; and that an election held for that purpose at any other time is not a legal election.

3. That the relator was not legally elected to the office of judge of probate, because the special election at which he claims to have been elected was not called by legal authority; nor was any legal notice given of such an election by the officer required by law to give such notice.

We are of the opinion that the respondent is correct in this contention.

The Constitution (article 6, § 21) provides:

"The first election of judges of the probate courts shall be held on the Tuesday succeeding the first Monday of November, one thousand eight hundred and fifty-two, and every fourth year thereafter."

How. Stat. § 137, provides for the election of judges of probate at the time prescribed by the above article of the Constitution. The rule was well settled in *Westinghausen v. People,* 44 Mich. 265, that the "general election" specified in the Constitution meant the biennial November election. It is clear that the spring election is not a general election, except the election relating to the Justices of the Supreme Court, Regents of the University, and circuit judges. Section 2, subd. 19, How. Stat., provides:

"The words 'general election' shall be construed to mean the election required by law to be held in the month of November."

It will be seen that the words "general election," used in the Constitution and in the statutes, as applied to the office of judge of probate, can have no other meaning than the biennial election held in November, and that an election at any other time to that office must be regarded as a special election. *People v. Lord,* 9 Mich. 226.

There was a vacancy in the office of judge of probate caused by the resignation of Edward P. Wallace. Under the Constitution, the Governor has the right to fill a vacancy by an appointment provisionally until a successor is elected and qualified. When elected, such successor shall hold his office the residue of the unexpired term. Special elections, by section 138, How. Stat., subd. 4, may be held—

"When a vacancy shall occur in either of the said county offices after the commencement of the term of service, and more than six months before the next general election."

By section 140 no special election shall be held within three months next preceding a general election, except in cases where the Governor shall order a special election; and by section 141 it is provided that "special elections for the choice of the county officers named in section 1 of this act shall, except in cases in which a special election is to be ordered by the Governor, be ordered by the board of supervisors." Among the county officers enumerated in section 1 of the act is that of probate judge. Section 150, How. Stat., then provides for the calling of a special election by the board of supervisors. It is as follows:

"When the board of supervisors of a county shall order a special election to fill a vacancy in any office, such order shall be in writing, and signed by the chairman and clerk of the board, and shall specify how the vacancy occurred; the name of the officer in whose office it occurred; the time when his term of office will expire; and the day on which such special election shall be held, not being more than forty nor less than thirty days from the making of such order; and such clerk shall without delay cause a copy of such order to be delivered to the township clerk of each township, and to one of the inspectors of election in each ward of any city in the county."

Under section 153 the township clerks and inspectors of election receiving such notices are to give notice in writing ten days before the election to the electors by posting the same in three of the most public places in the township or ward.

The only power under the statutes above cited to order a special election to fill this vacancy is vested in the Governor or the board of supervisors, and the special election may be called by either the Governor or board of supervisors without reference to the date on which the spring election is to be held for the election of township officers. The sheriff had no power or authority to

declare a vacancy in the office of judge of probate of
Montcalm county, or to order an election to be held.
The appointment of Lucian C. Palmer by the Governor
to that office, while provisional, was to be continuous
until a successor was elected and qualified, and such an
election could only take place at some general election
in November, or at a special election, ordered either by
the Governor or the supervisors of the county. The
right to hold an election cannot exist or be exercised with-
out an express grant of the power to do so by the Legisla-
ture. The rule laid down by Mechem in his work on
Public Offices and Officers (§ 170) is that—

"In order to the holding of a valid election, authority
so to hold it must be found conferred by the people
either directly through the constitution, which they have
themselves ordained, or indirectly through the enactments
of their legal representatives, the legislature. Without
such authority, no election, except it be one held with
the unanimous consent of all persons entitled to partici-
pate, can be of any legal importance."

The present case, the election being special, is distin-
guished from *Adsitv. Secretary of State,* 84 Mich. 420. In
that case, the election was held at the general election
in the fall of 1890 to fill the vacancy in the office of
circuit judge for the seventeenth judicial circuit. The
Secretary of State refused to give the notice, but the
sheriff of the county published a notice, which was acted
upon by the voters. It was said by Mr. Justice MORSE
in that case:

"The right and duty to hold the election is derived
from the law, and not from the notice. The statute
makes the time and occasion of the election imperative.
*   *   *   But where the time and place of the election
are not fixed by law, but the election is only to be called,
and the time and place to be fixed, by some authority
named in the statute, after the happening of some con-
dition precedent, it has been held that it is essential to

the validity of such an election that it be called, and the time and placed fixed, by the very agency designated by law, and none other. *Stephens v. People*, 89 Ill. 337."

In the present case, as has been stated, the election was special, and the time and place of the election could be fixed only by the authorities designated in the statute. Therefore it does not fall within the rule laid down in *Adsit v. Secretary of State, supra*, or *People v. Village of Highland Park*, 88 Mich. 653. In the last-named case a notice was given by the authorities named by the statute to give it, and the question was one relating to the irregularity in the steps taken to call it; and it was said by the Court:

"All the electors understood it, and all but eight voted. No one's rights have been injuriously affected, and no one defrauded of the right to vote. The election in such cases must be held to be valid."

The case of *Attorney General v. Trombly*, 89 Mich. 50, is also referred to as having some bearing upon the question under consideration here; but in that case the elec_ tion was ordered by the board of supervisors, and held in accordance with such order. It appears that under the statute the members of the board of auditors of Wayne county are required- to be elected annually, and as to that office the spring election may very properly have been called a general election; but as to the judges of probate the time when they shall be elected is not only designated in the Constitution as a "general" election, but by the provisions of the same section the election is to be held at the general election held in November; so that all elections for that office, except those held in November, must be denominated "special" elections.

It must therefore be held that the relator was not legally elected to the office of judge of probate of that

county, for the reason that the election, being special, was not called by the authorities appointed by statute to call it, who alone have the right to fix the time and place of the election; and the notice given by the sheriff, fixing the time and place, was without warrant of law. No legal election was therefore held. The fact that the people voted for the several candidates put in nomination cannot aid the relator's claim, for the reason that the election was not held by legal authority.

In *People v. Porter*, 6 Cal. 26, there was a vacancy in the office of county judge. To fill it by special election, the law required the governor by proclamation to give notice of such vacancy, and the board of supervisors to give notice of the election. The board of supervisors gave notice of the election without waiting for the governor's proclamation. The election was held void. This rule was affirmed in *People v. Martin*, 12 Cal. 409. In the present case the people acted upon the assumption that there was a vacancy to be filled. There was no vacancy, and one could be created only by the giving of the notice—the election being special—by the authorities pointed out by the statute. The rule is laid down by Judge Cooley in his work on Constitutional Limitations that where, by the express provisions of the statute, the election is to be held after the proclamation or notice announcing the time or place or both, and where no such proclamation has been made or notice given, the election is void.

The proceedings must be quashed, with costs to the respondent.

The other Justices concurred.