CHASE v. BOARD OF ELECTION COMMISSIONERS OF WAYNE COUNTY.

1. CONSTITUTION—AMENDMENT—SUBMISSION TO ELECTORS—TIME— GENERAL ELECTION.

Section 1, article 20, of the Constitution, construed with reference to the history of the Constitution and the amendments thereto, implies that amendments proposed by the legislature must be submitted to the people at one of the general elections, either the autumn election held in the even years, or the spring election held in the odd years, whence the direction in Joint Resolution No. 34, Pub. Acts 1907, that the constitutional amendment proposed thereby be submitted at the spring election of 1908, is ineffective.  HOOKER and McALVAY, JJ., dissenting.

2. SAME.

The constitutional direction being that such amendments be submitted at the " next spring or autumn election," a duty is imposed upon the legislature of submitting amendments proposed by it at one of the two elections mentioned occurring during the term of office of the legislature making the submission, whence the amendment proposed by Joint Resolution No. 34, Pub. Acts 1907, the spring election at which it might have been submitted having passed, must be submitted at the autumn election of 1908.  MONTGOMERY, HOOKER, and McALVAY, JJ., dissenting.

Mandamus by Henry E. Chase, deputy attorney gen-

eral, to compel the board of election commissioners of Wayne county to submit a proposed amendment to the Constitution to the people at the April election. Submitted March 5, 1908. (Calendar No. 22,752.) Writ denied March 9, 1908.

*Henry E. Chase*, Deputy Attorney General, and *Thomas Ambrose Lawler*, Assistant Attorney General, for relator.

*P. J. M. Hally* and *George B. Yerkes*, for respondents.

MOORE, J.    The legislature of 1907 passed Joint Resolution No. 34, which proposed an amendment to section 10 of article 14 of the Constitution.    It also provided that the amendment be submitted to the people at the election to be held upon the first Monday of April in the year 1908, and for the giving of the necessary notices.    The respondents have refused to give the notice provided for in the resolution.    This is a mandamus proceeding to compel them to do so.

It is the contention of respondents that there is no spring election to be held in the city of Detroit, the city of Saginaw, and perhaps other portions of the State in April, and that the legislature is not authorized to direct the submission of an amendment to the Constitution, originating in the legislature, at the annual elections held in the month of April in the even years, because said elections are not State-wide.

Section 1, article 20, of the Constitution, reads as follows:

" Any amendment or amendments to this Constitution may be proposed in the senate or house of representatives. If the same shall be agreed to by two-thirds of the members elected to each house, such amendment or amendments shall be entered on the journals respectively, with the yeas and nays taken thereon, and the same shall be submitted to the electors at the next spring or autumn election thereafter, as the legislature shall direct; and if a majority of electors qualified to vote for members of the legislature, voting thereon, shall ratify and approve such

amendment or amendments, the same shall become part of the Constitution."

It is clear that the elections at which these amendments are to be submitted, are elections at which all the constitutional qualified electors in the State can vote. The language indicates that the election referred to is one not to be created by the legislature, but one already existing. It is quite obvious, too, that the elections referred to are elections prescribed by the Constitution. This language, as will appear later, came into the Constitution in 1876.

Prior to 1876, section 1 provided that when an amendment had been properly agreed to by the legislature, "the same shall be submitted to the electors at the next general election thereafter." A resolution proposing an amendment was properly passed by the legislature and filed in the office of the governor, March 30, 1875. It was not submitted at the April election thereafter, but was submitted at the November election thereafter and ratified by the electors. The question arose as to whether it ought not to have been submitted in April, the claim being that a general election was held in April. The provision of the section was construed in *Westinghausen* v. *People*, 44 Mich. 265, where Justice CAMPBELL reviews at some length the various constitutional provisions and the convention debates bearing upon the question, and reached the conclusion that the words in the section "the same shall be submitted to the electors at the next general election thereafter" referred to the fall election, and that the amendment was properly submitted.

In the opinion the following language is used:

"We have no means of knowing what were the reasons which led the several members of the constitutional convention to prefer a submission at the fall election. It may be presumed it was an idea, which facts have always warranted, that more votes are cast at that election than at other times."

It has already appeared that section 1 was changed by the amendment of 1876 so that a proposed amendment

might be submitted to the electors by the legislature "at the next spring or autumn election thereafter." We are at once confronted with the question, What is meant by the words "the next spring election thereafter?" The Constitution of the State mentions the general biennial fall election in section 34 of article 4; refers to the same election in section 3 of article 5; refers to the same election in section 1 of article 7. It refers to an annual election on the first Monday of April in each organized township in section 1, article 11; section 6 of article 13 reads:

"There shall be elected in the year eighteen hundred and sixty-three, at the time of the election of a justice of the Supreme Court, eight regents of the university; two of them shall hold office for two years; two for four years, two for six years and two for eight years. * * * At every regular election of a justice of the Supreme Court thereafter, there shall be elected two regents whose term of office shall be eight years."

This was not a part of the Constitution of 1850 as originally adopted, but was an amendment that was added and ratified by the people at the election in 1862. By the terms of this section a provision of the statutes was incorporated into the Constitution, and which is section 2 of the act, to provide for the organization of the Supreme Court, section 178, 1 Comp. Laws.

"A general election shall be held in the several townships and wards of the State, on the first Monday of April, in the year one thousand eight hundred and fifty-seven, and on the first Monday of April in every second year thereafter, for the election of judges or justices of the Supreme Court."

It will be observed the Constitution refers to two State-wide elections, one in the fall of the even year and the other in the spring of the odd year.

It will also be observed that the annual election held on the first Monday in April referred to in section 1, article 11, is not a State-wide election, but applies only to each organized township, and in some portions of the State no election is held in the month of April in the even years.

When section 6, article 13, was enacted, the constitutional law of the State therein referred to required the election of a justice of the Supreme Court at the annual April election occurring each odd year.  Construing section 6 of article 13 in connection with that statute, it will be seen that the Constitution has at least recognized—if it has not made—the spring election occurring each odd. year State-wide in its character.  We had, then, at the time the language of section 1, article 20, was inserted in the Constitution, a spring election and an autumn election State-wide in character.  Each of these occurred once in two years, the spring election in the odd year and the autumn election in the even year.  It would seem that these are the elections referred to in section 1 of article 20. Otherwise we are compelled to conclude that the people in authorizing the legislature to submit amendments at the next spring election intended also to give the legislature authority to create an election.  The language used is not appropriate to convey that meaning.  Surely no one would argue that it gave the legislature authority to create a new election in the autumn, and it is difficult to argue that the legislature has greater authority to submit in the spring than it has in the autumn.  The suggestion is made that the word " next " before " spring " indicates that the legislature may submit it at the succeeding April election, even though that election may not occur in the odd year.  According to the same argument, it might be said that the legislature might submit it the succeeding autumn election though that election occur in the odd year.  It is, however, conceded that it cannot do that.  It is also conceded that the next autumn election means the election occurring in the autumn of the even year, and by the same reasoning the next spring election means the election occurring in the spring of the odd year.

Section 1, article 20, as it now reads, was construed in *Seneca Mining Co.* v. *Secretary of State*, 82 Mich. 573 (9 L. R. A. 770).  An amendment was submitted to the electors at the April election in the year 1889, and the

question was as to when it took effect. Justice Long, speaking for the court, among other things, said:

" Whatever interpretation may have been given this article by the legislature, or others acting under it, prior to the amendment of 1875, which was ratified by the electors, so that the vote of the electors upon amendments could be taken at the spring election, or in the autumn, it is very evident that it was the intention of the legislature of 1875, so to change the time when the amendments should take effect that legislation could at once be had under the change so made in the Constitution. If the time of the taking effect of these amendments was still postponed until the commencement of the year following, then the submission of such amendments to the electors for their approval might as well have been at the general election as in the spring, and nothing would have been gained by a submission at an earlier period. It is quite apparent that the very purpose, and the only object, to be accomplished by this change in section 1, was to enable the legislature, during its sitting, to enact laws to meet the object sought to be accomplished by a change in the fundamental law," etc.

Justice Long doubtless had in mind what we all know to be the fact, that State-wide elections are held in the odd years, and that the legislature convenes in January of the odd years and holds its sessions until long past April. It is also a matter of common knowledge that the legislature is not ordinarily in session in the even years, and is never in session in those years unless convened by the governor.

It is said the case of *Peck* v. *Board of Sup'rs of Berrien Co.*, 102 Mich. 346, is decisive of the case in favor of the contention of the relator. There is language used in the opinion that tends to support the contention. The question involved did not, however, relate to the submission of an amendment to the Constitution, but was whether a county seat was properly removed, and the statute provided that the question of its removal should be submitted to the electors "at the time of holding the next township meeting." The immediate question which was under discussion when the language was used was

the power of the board of election commissioners of the county to prepare the ballots which were used. It appears by the opinion that section 9 of Act No. 190, Pub. Acts 1891, made it their duty to provide ballots for "all proposed constitutional amendments, or other questions to be submitted to the electors." It is apparent that the language relied upon by the relator was not necessary to the decision of the case.

In *People* v. *Burch*, 84 Mich. 408, it was held that the legislature had a right to submit an amendment at the April election in the year 1890. In the course of the opinion it was said:

"It is not necessary here to determine whether or not the spring election of 1890 was a general election; but a general election was held November 4, 1890, and any spring election at which justices of the Supreme Court and regents of the University are elected, is necessarily also a general election, and is now so regarded."

In *People* v. *Palmer*, 91 Mich. 283, it is said:

"The rule was well settled in *Westinghausen* v. *People*, 44 Mich. 265, that the 'general election' specified in the Constitution meant the biennial November election. It is clear that the spring election is not a general election, except the election relating to the justices of the Supreme Court, regents of the University, and circuit judges."

The case of *Westinghausen* v. *People*, supra, is authority for the statement that, prior to the amendment of 1876, section 1, article 20, did not authorize the submission of amendments except at the biennial November election.

The case of *Seneca Mining Co.* v. *Secretary of State*, supra, and the case of *People* v. *Burch*, supra, are authority for the proposition that since the amendment of 1876 it is competent for the legislature to submit amendments at the biennial April elections held in the odd years.

The case of *People* v. *Burch*, supra, is also author-

ity for the proposition that the April election in the odd years is a general election.

The case of *People* v. *Palmer* is authority for the proposition that the spring election is not a general election, except the election relating to justices of the Supreme Court, and regents of the University, or circuit judges.

As the law now stands there is no spring election held in April of the even years, in the city of Detroit, in the city of Saginaw, and perhaps other municipalities in the State. No provision is made for the holding of an election in those localities in April of this year, unless it is by virtue of the joint resolution. It is a matter of common knowledge that there is not likely to be as large an attendance of electors at an election when no public officers are to be elected, as would attend an election where candidates for office are to be elected. The reasons for submitting an amendment to the Constitution at an election when there is likely to be a general attendance of the electors are just as pressing now as they ever were. We do not think it was contemplated that these amendments should be submitted except at a general election. It follows logically that an annual election held in the month of April in the even years, which election is not held in all the election precincts of the State, is not "the next spring election" referred to in section 1 of article 20 of the Constitution.

We now come to the consideration of another question which is not raised by the record, but which is of such great practical importance that we ought to give it some attention, and that is whether, because the legislature has named an improper time for the submission of the amendment, its submission must fail altogether. The language of section 1 must be borne in mind, i. e., "and the same shall be submitted to the electors at the next spring or autumn election thereafter." It is apparent that there is a duty imposed upon the legislature, and that is to submit the amendment at the time designated by section 1. We have already shown that the spring election, held in

the even years, which is not an election general through-
out the State, is not the next spring election thereafter
referred to in section 1, but the November election would
be the next autumn election thereafter, and would be the
first opportunity at which the amendment could be properly
submitted. The language of Justice LONG, in *Seneca
Mining Co.* v. *Secretary of State,* supra, where he says:
" It is quite apparent that the very purpose, and the only
object, to be accomplished by this change in section 1,
was to enable the legislature, during its sitting, to enact
laws to meet the object sought to be accomplished by a
change in the fundamental law," etc., is very germane in
this connection.

It has already been stated that the legislature convenes
in January of the odd years. The members of the legis-
lature are elected for two years, upon the expiration of
which their terms of office end. If an amendment is
adopted at the biennial April election held in the odd
years, which is the only general spring election, the leg-
islature can at once pass the legislation made desirable by
the amendment. If that election has passed so that the
proposed amendment cannot be submitted, it then becomes
the duty of the legislature to submit the amendment at
the next autumn election thereafter. If the amendment
is adopted it at once becomes part of the Constitution, and
if the emergency is great, the same legislature which or-
iginated the amendment and submitted it for adoption,
can be convened in extra session, and pass any legislation
made necessary or desirable by the adoption of the amend-
ment. Giving this construction to the section effectuates
fully the purpose of the amendment as stated by Justice
LONG.

It is therefore the duty of the legislature to submit
amendments proposed by it at one of the two general elec-
tions occurring during its term of office. The spring elec-
tion of 1907 having passed, the amendment must be sub-
mitted at the autumn election in 1908.

The application for the writ of mandamus is denied.

GRANT, C. J., and BLAIR, OSTRANDER, and CARPENTER, JJ., concurred with MOORE, J.

HOOKER, J.   For reasons stated in my opinion in the case of *Carton* v. *Secretary of State*, ante, 371, I think that the writ should be granted.

MCALVAY, J., concurred with HOOKER, J.

MONTGOMERY, J.   Whatever view may be taken of the first question discussed in the opinion of Mr. Justice MOORE, I cannot think this court can direct a submission of the amendment at a time not fixed by the legislature.