## CARLTON INDEPENDENT SCHOOL DIST. v. JORDON et al. (No. 434.)

Court of Civil Appeals of Texas. Eastland. June 8, 1928.

Rehearing Denied Sept. 28, 1928.

Sam M. Russell and Chandler & Chandler, all of Stephenville, for appellant.

Edison, Oxford & Johnson, of Stephenville, for appellees.

FUNDERBURK, J. The Carlton independent school district was created by a special act of the Legislature in 1909 (Loc. & Sp. Acts 1909, c. 65) embracing lands wholly within Hamilton county, but contiguous to lands in Erath county. The act, among other things, provided that all laws theretofore and thereafter enacted affecting independent school districts formed by incorporating towns and villages for free school purposes only should apply to the district thus created. In 1916 certain individuals, including appellee J. A. Jordon, upon petition to the trustees of the Carlton independent school district, by order of the board of trustees, had certain lands belonging to them and lying in Erath county adjacent to a line of the Carlton independent school district included in said district. This annexation of territory was expressly under authority of section 153, Acts 1905, p. 303, which became article 2865, R. S. 1911, and is now article 2765, R. S. 1925. The inclusion of the Erath county lands in the independent school district did not increase the total area of the district to more than 25 square miles. The resolution of the board of trustees taking in the additional territory was passed August 11, 1916, and at that time no notice of such action had been given to the county school trustees of Erath county, nor had the latter in any manner signified their assent thereto. Later, however, and about November 1, 1920, a resolution of the county school trustees of Erath county undertook to ratify the inclusion of said territory in the Carlton independent school district.

On June 4, 1923, the county school trustees of Erath county, being presented with a petition from the trustees of the Palm Rose common school district in said county to have included in said common school district certain lands consisting in part of the lands of appellee Jordon, granted said petition and included, or attempted to include, such lands in the Palm Rose common school district. No notice of this action was given to the Carlton independent school district or its trustees. Following this action on the part of the county school trustees of Erath county, appellee's lands were, from year to year, assessed for taxes and taxes paid thereon in said common school district.

This suit was by the Carlton independent school district against said Jordon to collect school taxes for a number of years and to foreclose a tax lien on his land. Suit was originally brought in Hamilton county, but was transferred to Erath county upon a plea of privilege. Appellee Jordon, in addition to contesting his liability for the taxes, set up facts showing that his lands had been included in the Palm Rose common school district in Erath county; that taxes were being levied, assessed, and collected in said district, and prayed that said Palm Rose common school district be made a party defendant in order to provide immunity against the liability of appellee for the payment of taxes to both school districts. The trustees of the Palm Rose common school district intervened in the suit, claiming that appellees' lands were a part of said common school district, and asserting their right as against appellant to the jurisdiction over appellee and his lands. Also the state of Texas, upon the relation of said parties, by a proceeding in the nature of quo warranto intervened to contest the validity of the action by which the Erath county territory had been attempted to be included as a part of the Carlton independent school district in Hamilton county.

The trial court reached the conclusion that the board of trustees of the Carlton independent school district, at the time in 1916 when they attempted to include appellee's lands with others in said district, had no lawful authority to do so, and accordingly gave judgment against appellant, and, further, in response to proper pleading and prayer therefor, enjoined the collection of school taxes of appellee or any effort to assert a lien therefor against his lands.

█ The appeal presents a number of interesting questions. One of such questions is whether appellee Jordon by way of defense to a tax suit can question the validity of the proceeding by which the boundaries of the Carlton independent school district were extended to include the lands of appellee. The necessity for determination of this question is avoided, we think, by the fact that the state of Texas, by proper intervention, tenders that issue. While appellant complains that the state, upon the relation of authorities of the Palm Rose common school district, was thus permitted to come into the case and litigate the question, we are unable to reach a conclusion that this was not a correct procedure, and accordingly overrule appellant's assignments complaining of this action of the court.

█ The only question which we think it necessary to consider is whether or not, at the time the Erath county lands were attempted to be included within the Carlton independent school district of Hamilton county, did the provisions of article 2865, R. S. 1911, under which such action purported to have been taken, in fact, authorize such extension. No question is involved of the regularity of the procedure by which the territory was attempted to be annexed. If the statute gave the authority to thus extend the boundaries of an independent school district lying wholly within one county so as to include territory in an adjoining county, it is quite certain to our minds that this question must be determined in favor of appellant's contentions.

At the time the statute in question was enacted, the Legislature construed its power to include that of authorizing the formation of school districts lying partly in different counties. Acts 1905, § 55, p. 277 Had the Legislature possessed such power, we have no doubt that a proper construction of the statute in question would require us to hold that it afforded the requisite authority. After the enactment of the statute, however, the Supreme Court, in Parks v. West, 102 Tex. 11, 111 S. W. 726, determined that the Legislature had no authority to authorize the formation of school districts lying partly in different counties. This decision had the effect necessarily of limiting the operation of article 2865, R. S. 1911, to territory in the same county in which the school district was wholly located. In order to authorize the Legislature to provide for the formation of districts composed of parts of two or more counties, section 3, art. 7, of the Constitution was on September 24, 1909, amended. The amendment simply extended the power of the Legislature with reference to authorizing the formation of school districts to include the power to provide for districts embracing parts of two or more counties. The amendment, as we construe it, was purely enabling and in no sense self-executing. Had the Legislature never seen fit to provide for the formation of districts lying partly in two or more counties, none ever could have lawfully existed, save and except those which by the same constitutional amendment had been expressly validated. In such case, of course, there never could have been any serious contention that this statutory provision could have so operated as to authorize the extension of the boundaries of a school district in one county to include part of another county. Our whole problem then may be otherwise stated, as follows: Does a statute which, at the time of its enactment, by reason of constitutional limitation, is restricted in its scope of operation to the territory of a particular county immediately and without further legislative act become operative beyond the boundaries of such county when by amendment not self-executing of the Constitution the former limitation upon legislative authority is removed?

Consideration must be given to the fact that R. S. 1911, art. 2865, was never changed from the time it was enacted in 1905. The first act of the Legislature undertaking to exercise the authority given by the amendment of 1909 to provide for county-line school districts was chapter 100, p. 200, General Laws of 1911. That portion of this act having reference to independent school districts is as follows:

"Independent school districts may be created, containing territory within two or more counties of the state of Texas, in the same way and manner that towns and villages are created under title 18 of the Revised Statutes of 1895; provided, that the map required by said title 18 shall show the correct location and position of the county line or county lines involved in such incorporation proceedings. Said incorporated free school district containing territory in two or more counties shall have all the rights, powers, and privileges granted under the General Laws of the state to incorporations for the free school purposes only. The same modes, manners, and methods of government and procedure provided by the General Law for independent school districts incorporated for free school purposes only shall govern the management and control of the incorporated school districts for free school purposes containing territory within two or more counties."

The way and manner that towns and villages were authorized to be created under title 18 of R. S. 1895, was provided for in article 580, as follows:

"If the inhabitants of such town or village desire to be so incorporated, at least twenty residents thereof, who would be qualified voters under the provisions of this chapter, shall file an application for that purpose in the office of the judge of the county court of the county, in which the town or village is situated, stating the boundaries of the proposed town or village, and the name by which it is to be known, if it be incorporated, and accompany the same with a plat of the proposed town or village, and including therein no territory except that which is intended to be used for strictly town purposes; provided, that if any town or village be situated on both sides of a line dividing two counties, application may be made to the judge of the county court of either county in which a portion of said town or village is located, in manner and form as is hereinbefore provided."

In 1916, when the Carlton independent school district expressly purporting to act under authority of R. S. 1911, art. 2865, attempted to extend the boundaries of the Carlton independent school district to include a portion of Erath county, such extension of boundaries, if valid, made of the district a county-line school district. There is no claim asserted that the authority to thus create a district lying partly in different counties was derived from said chapter 100, Acts 1911, p. 200. Certain it is that the way and manner of establishing such a county-line school district was not that prescribed in section 154b of said act. If R. S. 1911, art. 2865, prior to the constitutional amendment in 1909, certainly did not authorize the extension of boundaries in the way attempted, when and how did such statute become authority for such procedure? The answer must be, it seems to us, that no such extension of the scope of that statute could there be, unless it resulted ipso facto from the adoption of the constitutional amendment. But, as said before, the constitutional amendment, in the respect under consideration, was not self-executing, but was a mere grant of authority to the Legislature. We are therefore of the opinion that the constitutional amendment did not give to the pre-existing statute any

other or wider scope of application than it had prior to the adoption of the amendment.

We have been cited to no authority upon the precise point and have been unable to find any. The principle, however, is well established by analogy. For instance, the very constitutional amendment under consideration was perhaps as much or more for the purpose of validating county-line school districts that had theretofore been attempted to be created as to provide for the future establishment of such districts. If any unconstitutional law could not be revitalized by subsequently removing the constitutional restrictions, it seems to us that the scope of a statute restricted by the Constitution would not be subsequently enlarged by removal of the constitutional restriction. As said by the Supreme Court of Michigan in Seneca Mining Co. v. Secretary of State, 82 Mich. 573, 47 N. W. 25, 9 L. R. A. 770:

"If the lawmaking power is prohibited from enacting a law, and in disregard of such prohibition it goes through the forms of enacting a law, such enactment is of no more force or validity than a piece of blank paper, and is utterly void, and power subsequently conferred upon the Legislature by an amendment of the Constitution does not have a retroactive effect, and give validity to such void law."

The Supreme Court of Nevada in State ex rel. Stevenson v. Tufly, 20 Nev. 427, 22 P. 1054, 19 Am. St. Rep. 374, says:

"The act being void, no subsequent adoption of an amendment to the Constitution, authorizing the Legislature to provide for such investment, would have the effect to infuse life into a thing that never had any existence."

On this point, the Supreme Court of California, in Banaz v. Smith, 133 Cal. 102, 65 P. 309, dealing with charter provisions which were void because unconstitutional, says:

"If void from the beginning the amendment * * * did not give life to such provisions. That would give the amendment the effect of enacting laws instead of merely authorizing the legislature to do so, and it would be to enact a law to which no reference was made, and which the people in adopting the amendment could not have had in mind. Such is not the ordinary function of a constitutional provision, and such effect will not be given to it unless it is expressly so provided."

Aside from these analogies we think we would not be justified in holding that R. S. 1911, art. 2865, gave any authority for the extension of the boundaries to include appellee's lands, for the reason that the Legislature, by the act of 1911, in undertaking to provide for the establishment of county-line school districts, did not purport to provide for but one method. We would not, we think, by means of judicial construction, undertake to read into any other statute another and different method. In fact, without evidence of an intent to authorize more than one meth-od for the establishment of such districts, any theretofore existing provision would, perhaps, have been repealed by the enactment of section 154b of the Acts of 1911.

We do not regard the case of Molyneaux v. Amarillo Independent School District (Tex. Civ. App.) 277 S. W. 185, as applicable to this question. There, although the original district was probably wholly situated in Potter county, the subsequent extension to include a part of Randall county was made by a new act of the Legislature re-establishing the district. No question is presented of the power of the Legislature to authorize an extension, but the question is, Had the Legislature so provided at the time the boundaries of the Carlton independent school district were attempted to be extended, as shown by the facts of the case?

The case of Common School District No. 16, Lampasas County, v. Keeling, 113 Tex. 523, 261 S. W. 364, seems to have involved the extension of the boundaries of a district located wholly in one county to include territory in a different county, just like we have here. If so, it must be admitted that the conclusions we have reached would, if same had been applied, resulted in a different disposition of that case unless there is a distinction on the ground of this being a direct proceeding and the other a collateral one. It is very apparent, however, that in that case the question was never raised. The court seems to have merely passed upon the validity of R. S. 1911, art. 2865 (R. S. 1925, art. 2765), and failed to notice, probably because the point was not made, that said statute without change of form long antedated the amendment to the Constitution that permitted the existence of school districts lying partly in different counties.

Under the circumstances we are inclined to the view that the Supreme Court in that case did not have occasion to consider or pass upon the point we have been called upon to determine in the case at bar.

The judgment of the trial court will therefore be affirmed.

### On Rehearing.

In its motion for rehearing appellant says:

"If we understand the court's holding, it is that there is in Texas no statute authorizing the extension of boundaries of independent school districts lying in more than one county."

This indicates a misunderstanding of our opinion. We do not so hold. On the contrary, we make no question that the provisions of R. S. 1925, art. 2765, is applicable to a county-line independent school district which has been created under the provisions of section 154b, c. 100, p. 200, General Laws of 1911. It has such application only by virtue of the provision in said section 154b, reading:

"Said incorporated free school district containing territory in two or more counties shall have all the rights, powers, and privileges granted under the General Laws of the state to incorporations for the free school purposes only."

This provision by its express terms applies to a county-line independent district, and cannot be held to extend the application of article 2765 to accomplish the *creation* of such a district without compliance with, but in an entirely different manner than, that provided in said section 154b.

The motion for rehearing is overruled.