State, *ex rel.* Taylor *et al.*, *v.* Mount *et al.*

---

## STATE, EX REL. TAYLOR ET AL., *v.* MOUNT ET AL.

[No. 18,760. Filed Oct. 14, 1898. Rehearing denied Dec. 23, 1898.]

PLEADING, — *Complaint.* — *Joint Action.* — *Candidates for Office.* — *Judges.* — *Appellate Court.* — The nominees for the office of appellate judges have such a common interest in the result of an action for a writ of mandate requiring the state board of election commissioners to place their names on the official ballot as to sustain a joint action. *pp. 681, 682.*

APPELLATE COURT. — *Election of Judges.* — *Term of Office.* — The act creating the Appellate Court limited the existence thereof to six years from March 1, 1891; the act of 1893 fixed the term of office of each judge first elected at four years from the 1st day of January, 1893. *Held*, that the judges elected at the general election of 1896 took their offices January 1, 1897, and held them until March 1, 1897, when the existence of the court was to end by law, notwith-

State, *ex rel.* Taylor *et al.*, *v.* Mount *et al.*

standing the subsequent enactment of a statute extending the existence of the court four years. *pp. 682-685.*

APPELLATE COURT.—*Judges.—Extension of Term.*—The act of 1891 created the Appellate Court and limited its existence to March 1, 1897; the act of 1897 extended the period of its existence for four years from January 1, 1897, and provided that the present judges should hold their offices for and during the term of four years from the 1st day of January, 1897. *Held,* that the provision extending the term of the present judges is void as beyond the power of the legislature. *pp. 684-687.*

CONSTITUTIONAL LAW.—*Election of Officers.—Appellate Court.*—Section 1, article 15 of the constitution [providing that all officers whose appointments are not otherwise provided for in the constitution shall be chosen in such manner as may be prescribed by law, confers upon the legislature the power to prescribe by law the manner of electing such officers, but not the power to elect them. *p. 687.*

SAME.—*Elections.—Appellate Court.*—Under section 14, article 2 of the constitution, providing expressly for holding general elections, containing a proviso that the General Assembly may provide by law "for the election of all judges of courts of general and appellate jurisdiction by an election to be held for such officers only," the people have the right to elect the judges at general elections, except where the legislature has designated some other time for that purpose, and the legislature could not fill the office of appellate judge by appointment, if it had the power to appoint, only until the time of the next general election. *p. 688.*

APPELLATE COURT.—*Judges.—Election.—Amendment of Law.*—Section 2 of the act of January 28, 1897 (Acts 1897, p. 10), fixing the term of office of the judges of the Appellate Court at four years, cannot be construed with section 3 of the act extending the period of existence of the court, which by law was to expire March 1, 1897, to four years from January 1, 1897, so as to have the retroactive and incidental effect of causing the judges who had been elected at the preceding general election to have been chosen for the term of four years. *pp. 689, 690.*

From the Marion Circuit Court. *Reversed.*

*A. G. Smith, C. A. Korbly, F. E. Gavin, T. P. Davis* and *J. L. Gavin,* for appellants.

*Wm. A. Ketcham,* Attorney-General, and *George L. Reinhard,* for appellees.

HOWARD, J.—This was an action brought by the

State, *ex rel.* Taylor *et al., v.* Mount *et al.*

relators, in the name of the State, for a writ of mandamus, to require the appellees, who constitute the state board of election commissioners, to place upon the official ballot to be voted at the general election held in November, 1898, the names of the relators as candidates for judges of the Appellate Court.

In the complaint and alternative writ issued thereunder it is. shown that the relators are each eligible to the office of appellate judge, that each was duly nominated thereto and such nomination properly certified to the said board of election commissioners, but that said board refused to place the names of the relators upon the official ballot, claiming that there were no such officers to be elected at said election. To the complaint and alternative writ the appellees demurred for want of sufficient facts, and this demurrer was sustained by the court. Judgment was thereupon rendered denying the peremptory writ, and for costs against the relators.

As preliminary to a consideration of the case upon its merits, the appellees contend that the complaint is defective, for the reason that it discloses a joint action by the relators, whereas they have no joint or common interest in the result. There is no doubt that each of the relators is separately interested in the outcome of the action, inasmuch as each seeks election for himself to the office of judge of the Appellate Court. We think, however, that they have also a common interest in the decision of the case. They are all complaining of the one act of the board of election commissioners, who have refused to place their names on the official ballot, claiming that there is no right to fill the office of appellate judge at the ensuing general election. That is the one, actual, indivisible issue brought before the court, and each of the relators is equally interested in the decision

of that issue. The separate interests of the relators, which follow and depend upon the determination of this issue, are merely incidental, and are not before the court for any decision whatever. Is there a vacancy in the office of appellate judge, to be filled at the ensuing general election, and should the election commissioners therefore place the names of the relators on the ballot as candidates for that office? That is the question for decision, and it is too plain for argument that all the relators, nominees as they are for this office, have a common interest in the decision of the question. They ask only that the court answer the question by saying "Yes" or "No," and in this answer they all have a common interest.

Under authority of section 1 of article 7 of the constitution, which provides that, "The judicial power of the State shall be vested in a Supreme Court, in circuit courts, and in such other courts as the General Assembly may establish," the legislature, by an act approved February 28, 1891, created the Appellate Court, Acts 1891, p. 39, section 1336, Burns' R. S. 1894 (6562a, Horner's R. S. 1897), and following sections. By the terms of the act the State was divided into five Appellate Court districts, one judge to be elected from each district. The first judges were appointed by the Governor, "to serve until judges for said court shall be elected and qualified." The term of office of such judges was fixed at four years from the first day of January next ensuing their election, except that the first judge elected in the first district should serve for two years, and the first judges elected in the second and third districts should each serve for three years. The limit of the existence of the court was fixed at six years from March 1, 1891. By an act approved March 4, 1893, the term of office of each of the judges first elected was fixed at four years from the

1st day of January, 1893. Acts 1893, p. 293, section 1341, Burns' R. S. 1894. Thus stood the law at the time the present judges of the Appellate Court were elected, at the general election in November, 1896. They were to take their office on the 1st day of January, 1897, while the period of existence of the court was to end on the 1st day of March, 1897.

It is contended by the relators that, as the judges elected at the general election of 1896 were to take their office on the 1st day of January thereafter, and as the court itself was to end on the 1st day of March following, it therefore results that those judges were elected to serve for two months only; that is, from January 1, 1897, to March 1, 1897. Appellees, on the other hand, contend that, as the law fixed the term of office of the judges at four years from the 1st day of January following their election, it must result that the judges elected in November, 1896, were elected to serve for four years from January 1, 1897. It would seem that the contention of the relators must be correct. The general election of 1896 could be conducted only with reference to the law as it then stood. The term of the then incumbents of the office of appellate judge would expire on the 1st day of January thereafter, while the term of the court itself would expire on the 1st day of the succeeding March. The electors in casting their ballots for appellate judges in 1896 must therefore have had in mind that the officers to be elected could serve only from January to March, 1897. It would be absurd to say that the electors would, or could, choose judges to serve for a time after March 1, 1897, when there would be no court in existence, as then provided by law.

The people could not elect judges conditionally, on the supposition that the legislature might after-

wards extend the life of the court. It would be quite as reasonable to say that the people could elect judges for a court that had not yet been created, on the supposition that such a court might thereafter be created. We can look only to the law in force at the time of the election to know the effect of an election then held. The people conduct an election by means of the machinery of existing law, not by virtue of law that formerly existed, or that may thereafter exist. It is absolutely certain, therefore, that, so far as their election by the people is concerned, the judges elected at the general election in November, 1896, were elected to serve from the expiration of the terms of their predecessors, and until the expiration of the term of the court itself; that is, from January 1, 1897, to March 1, 1897.

Afterwards, by an act approved January 28, 1897, section 26 of the act of 1891, which limited the life of the court to the period of six years from March 1, 1891, was repealed; and the period of the existence of the court was extended for four years from January 1, 1897. Acts 1897, p. 10, section 6565a, Horner's R. S. 1897. Section 2 of this last act reads as follows: "That the term of office of each of the judges of said Appellate Court shall be four years from the first day of January next after his election; and that all of the present judges of said court shall continue to hold their office as such, respectively, for the districts for which they have been elected, for and during the term of four years from the first day of January, 1897." The first clause of this section is but a reenactment of the original provision of the law that the term of office of each of the judges should be four years from the 1st day of January next after his election. If by this reenactment the legislature intended to lengthen the terms of the judges already elected,—

which would be the equivalent of appointing them for such extended term, it is enough to say here, what will more fully appear hereafter, that the legislature had no such power. If the clause, however, was but a formal reenactment of the provision originally embraced in the statute, as first enacted in 1891, it is to be said that the reenactment left the law, in this respect, just as it had been at the time of the election of the present judges in November, 1896; and from what we have already said it is clear that the reenactment of the provision could have no effect upon the action of the electors in the previous November. By the second clause of the section, however, the legislature attempted to provide: "That all of the present judges of said court shall continue to hold their offices as such, respectively, for the districts for which they have been elected, for and during the term of four years from the first day of January, 1897."

Two facts are plain from this clause: First, the legislature explicitly recognized the incumbents as elective officers, elected by the people at the previous general election; and, second, the legislature assumed to itself the right to continue the judges in office for the full term to which the court had been extended. That the office is one elective by the people, save only that in case of vacancy an appointment may be made by the Governor, is not only recognized by the various acts in relation to the establishment and membership of the Appellate Court, but is also clear from the constitution itself. It is provided in article 5, section 18, of that instrument, that, "When, at any time, a vacancy shall have occurred * * * in the office of judge of any court; the Governor shall fill such vacancy by appointment, which shall expire when a successor shall have been elected and quali-

fied." "In two methods, and two only," said this court in commenting on the foregoing provision of the constitution, "can judges be chosen, by the people and by the chief executive,—and by the latter only where there is a vacancy." *State, ex rel.,* v. *Noble,* 118 Ind. 350, 4 L. R. A. 101. That the legislature cannot fill the office of judge of any court by its own appointment ought to be so evident as not to be in any manner controverted. If there is one principle that stands out more clearly in our constitution than any other, it is that the three departments of government, legislative, executive and judicial, are not merely equal, but are exclusive in respect to the duties assigned to each; that is, they are absolutely independent of one another. *State, ex rel.,* v. *Noble, supra.* But if the legislature could appoint, or continue in office after the expiration of the term for which they have been elected, the judges of any court, that would at once, to that extent, subject the judicial to the control of the legislative department. Speaking of the constitutional amendment adopted as a preliminary to the creation of the Appellate Court, it was said in the case above cited: "We know judicially that our constitution was so amended as to invest the legislature with power to create courts superior to the circuit courts, and that this was done for the purpose of enabling litigants to have appeals disposed of by a constitutional tribunal. It cannot be unknown to any one that all the departments of the government believed that the only method of administering the laws was by courts created under the provisions of the constitution, and this belief the people confirmed by their votes in favor of the constitutional amendment. This supplies strong reasons for holding, as we do, that no body not provided for by the constitution can exercise any part of the judicial power of the State."

It was accordingly held in that case that the legislature could not appoint commissioners to assist this court in the discharge of its duties. Still less could the legislature appoint the members of a court itself, or continue such members in office for a time beyond that for which they had been chosen by the people. We are therefore clearly of opinion that the second clause of section 2 of the act in question, by which the General Assembly attempted to provide that the present judges of the Appellate Court should continue to hold their offices for any time beyond the time for which they had been elected, is wholly void.

It seems to have been attempted by counsel to draw from the provisions of article 15 of section 1 of the constitution some argument in favor of the power of the legislature to appoint, or, what amounts to the same thing, to extend the terms of, judges of the Appellate Court already elected. That section of the constitution reads: "All officers whose appointments are not otherwise provided for in this constitution shall be chosen in such manner as now is, or hereafter may be, prescribed by law." But a construction has been given to this section adversely to the theory of counsel, by decision of this court, in *State, ex rel.,* v. *Denny,* 118 Ind. 382; *City of Evansville* v. *State, ex rel.,* 118 Ind. 426; *State, ex rel.,* v. *Denny,* 118 Ind. 449; and *State, ex rel.,* v. *Peelle,* 121 Ind. 495. It was held in those cases that by the section of the constitution referred to authority is conferred upon the legislature to prescribe by law the manner of electing such officers, but not the power itself to elect them.

Another like contention of counsel may be noticed here. It is, if we understand it, that, because the legislature has the power to create an Appellate Court and to fix the tenure of office of the judges for any

time not exceeding four years, it therefore follows that the legislature might provide for the filling of the offices for that time, by extending the terms of the incumbents to any time within the four-year period, even though that should be beyond the time of a general election, when the people could fill the offices. We have already shown, as we think, that the legislature has no right to fill the offices for any time, no matter how short. In addition, the constitution (article 2, section 14) provides expressly for general elections, to be held on the first Tuesday after the first Monday in November, with a proviso that the General Assembly may provide by law "for the election of all judges of courts of general and appellate jurisdiction by an election to be held for such officers only." Here is a plain recognition, if it were needed, of the right of the people to elect judges at general elections, save only in case the legislature has designated some other time for that purpose. It follows, therefore, that, even if the legislature had,—as it has not—the power to fill the office of judge by appointment, it could fill such office only until the time of the next general election, when the people could perform that high function for themselves. Counsel, in this connection, contend very stoutly that there was no vacancy in the office of appellate judge, such as the Governor could fill on the 1st day of March, 1897. Whether the extension of the life of the Appellate Court from March 1, 1897, until January 1, 1901, as made by the act of January 28, 1897, *supra*, was the creation of a new court, so as to cause an immediate vacancy in the office of the judges, we are not called upon to decide. The incumbents of the office on March 1, 1897, have continued to sit as judges of the court up to this time; and for the purposes of this action it is immaterial whether they continued as hold-

ing over under the constitution until their successors
should be elected and qualified, or whether they have
been filling a vacancy as *de facto* officers.    At fur-
thest, and giving to them the benefit of all uncertain-
ties as to their right to sit as judges after March 1,
1897, there can be no manner of doubt that they can-
not continue to hold their offices after their succes-
sors are elected at the ensuing general election, and
after such successors qualify and demand their of-
fices on the 1st day of January, 1899.    But counsel
for appellees say that, even if the last clause of section
2 of the act of January 28, 1897, *supra,* in which the
legislature assumed the right and power to appoint
the judges of the Appellate Court, or to continue them
in office after March 1, 1897, should be held invalid,
yet the first clause of that section, which fixed the
term of office of said judges at four years, construed
in connection with section 3 of the act, which ex-
tended the period of existence of the court for four
years from January 1, 1897, had the retroactive and
incidental effect of causing the judges who had been
elected at the preceding general election to have been
chosen for a period of four years.    This argument
rests on the assumption that the people elected those
judges with the knowledge that the legislature might
afterwards repeal the section of the law that then
limited the life of the court, and so enable the judges
to hold for a term of four years.    We think we have
already said enough to show the absurdity of this ar-
gument.    The people elect officers with a view to the
provisions of the law as it exists at the time of the
election.    According to the reasoning of counsel, the
people might at any general election, choose judges
of a court of conciliation, or of any other court which
the legislature might establish, because of the knowl-

edge the people would have at the time of the election that the legislature might at its ensuing session create such a court. The people choose officers for definite terms,—terms to begin and end at a known time, as fixed by the law in force at the date of the election. The fact that the legislature may thereafter abolish the office, or shorten or lengthen its duration, has nothing to do with the election itself. The constitution and the laws provide for filling vacancies, or for officers holding over until the time when the people may elect. The election itself, however, is independent of those future possibilities and contingencies.

The turning point in the case seems to be upon the question, were the incumbents of the office of appellate judge elected in 1896 for a term of four years? Since it must be conceded that the prescribed duration of the office was but two months from the expiration of the term of their predecessors, but one answer would seem possible, namely, that they could be elected for no longer period than the expressed duration of the office. The possibility of holding longer required legislative action which should give the office renewed life. It seems too plain for argument that the right to hold the office, from whatever source that right is derived, depends upon the existence of the office. Just how the people could be deemed to have elected for four years to an office which they had said, through their legislature, should expire in two months, seems beyond comprehension. The conclusion that they did so intend must rest upon the assumption that they then anticipated that the life of the court would be extended long enough to fill out the four years. The assumption cannot be authorized merely from the circumstance that the act was afterwards passed. It is sufficiently difficult to

know what laws have been passed, and the people cannot be held to know what laws will be passed.

In *State, ex rel.*, v. *Long*, 91 Ind. 351, it appeared that Long had been elected to the office of county recorder, and that before his term began his predecessor resigned, and Long was appointed to fill the vacancy, receiving a commission to fill such vacancy, and also a commission for his regular term thereafter. His successor, elected at the next general election, claimed that Long had only one term, which began at the date of the resignation of his predecessor. This court, however, held that the people had elected Long for a regular term to begin at the end of his predecessor's regular term, and that he was entitled to fill out that regular term, notwithstanding he had also been appointed to fill the vacancy occasioned by his predecessor's resignation. "Long's election," said the court, "gave him no right to the office until the expiration of the period for which Small [his predecessor] had been elected. * * * The term for which Long had been elected could not be changed by any act of Small." There, as here, the people voted for the officer for a term provided by the law as it then existed. It is wholly inadmissible, as said by the court in *People* v. *Palmer*, 154 N. Y. 133, 47 N. E. 1084, that the electors voted for an officer for a term to be thereafter fixed by the legislature.

The case was a very plain one when the people assembled at the polls at the general election, in 1896. There was an Appellate Court in existence, whose life was limited by the law upon the statute book, to the 1st day of March, 1897. There could then be no such thing as electing any one to fill the office of appellate judge after that date. In order that there be a judge there must be a court; or, as it said in *State, ex rel.*, v. *Friedley*, 135 Ind. 119, 21 L. R. A. 634. "There can be

no such thing as an office without responsive duties and functions to be performed by the officer." The people with this knowledge, therefore, could elect no judge of the Appellate Court for any time beyond the life of the court. Consequently, if the judges then elected had any authority to sit as such officers after March 1, 1897, such authority could not come from the electors, but must come from appointment by the Governor to fill a vacancy, or by holding over under the constitution until their successors should be elected and qualified. Any act of the legislature, we have already seen, could give them no official life. Two or three cases have been cited from courts of other states in support of the contention of appellees, but they are either not in point, as based on constitutional provisions different from our own, or else as being not well reasoned. Cases which abundantly support the conclusions we have reached are *People* v. *Palmer, supra; People* v. *Bull,* 46 N. Y. 57; *People* v. *Foley,* 148 N. Y. 677, 43 N. E. 171; *People* v. *Burch,* 84 Mich. 408, 47 N. W. 765; and *State* v. *Arrington,* 18 Nev. 412, 4 Pac. 735.

The contention of appellees that, because the legislature, by amendment of the statute, might have extended the life of the court to four years at any time before the election, and the judges would therefore have been elected for a full term of four years, it follows that the same results must take place when the legislature amends the statute in like manner after the election, for the reason, as counsel say, that an amendment to a statute becomes a part thereof, as if it had been enacted as a part of the original statute, is utterly fallacious, so far as it affects operations under the statute before such amendment. This principle was recognized by this court, as now constituted, in *Walsh* v. *State, ex rel.,* 142 Ind. 357,

33 L. R. A. 392, where an amendment to a fee and salary law, though held to be a part of the law, as if originally enacted with it, was yet construed to operate only as to matters occurring after the amendment. The court there cited, also, from *State* v. *City of Cincinnati,* 52 O. St. 419, 40 N. E. 508, 27 L. R. A. 737, where it was also held that "An unconstitutional statute may be amended into a Constitutional one, so far as its future operation is concerned." In full harmony with this ruling is 23 Am. and Eng. Enc. of Law, 284, where it is said, citing numerous authorities: "An amendatory act takes effect from the time of its passage and has no retroactive effect, in the absence of an expressed intent to the contrary. The original statute governs rights which have accrued before its amendment, but as to future acts the law as amended governs." Here the office was first filled by the people, and the duration of the term was afterwards attempted to be fixed, or rather changed, by the legislature. It is clear that the legislature had no power to do this: "In any proper sense," said the New York court of appeals, in *People* v. *Bull, supra,* "where the office is to be filled by one authority, and the duration of the term thereof is to be determined by another, the declaration of the duration must go before the filling, so that each authority may have its legitimate exercise." We are therefore of opinion that the period of time for which the present judges of the Appellate Court were elected came to an end on March 1, 1897, and that, whether appointed or holding over after that date, they can hold only until the election and qualification of their successors; and, therefore, that the state board of election commissioners should have placed the names of the relators upon the official ballot as candidates for said offices.

The judgment is reversed, with instructions to overrule the demurrer to the complaint and alternative writ, and for further proceedings not inconsistent with this opinion. The clerk is directed to certify this decision to the lower court at once.

Jordan and Monks, J. J., dissent; opinion by Jordan, J.

ON PETITION FOR REHEARING.

HOWARD, J.—The petition for a rehearing of this appeal is in some respects a remarkable one. None of the parties seem to have any interest left in the case. The honorable judges sitting on the appellate bench were not at any time parties to the action, and having been chosen at the recent election for a term ending only with the life of the court, January 1, 1901, they are certainly not now concerned with the decision. The relators were candidates and voted for at the election, and, having failed to receive a majority of the votes for appellate judges, are also no longer interested. Finally, the board of election commissioners, having, without delay or formality, complied with the law as declared by this court, and having no further possible action to take, can have no further interest. The duties of that high body are confined by statute to matters preliminary to the election. They have faithfully and impartially performed the duties there prescribed. A new board must be organized to prepare for the next general election. Hence it would seem that the appellee board is now *functus officii*. In truth, so far as parties are concerned, the case before us "is now simply a moot court question." Courts of final resort, however, ought not to be engaged in passing on moot court questions: there should be actual parties in interest. This was, in effect, the decision reached in overuling the petition for a rehearing in *Parker* v. *State, ex rel.*, 133 Ind. 178,

State, *ex rel.* Taylor *et al., v.* Mount *et al.*

18 L. R. A. 567. Here, as there, it may be said that, to all intents and purposes, "The parties have litigated the matters in issue between them, and have withdrawn, in so far as they can, from the jurisdiction of the court."

As far as argument is concerned, every plausible suggestion that could be advanced in support of the position taken by counsel for appellees was presented in the briefs and oral argument on the original hearing. The views so presented were then fully considered, and held insufficient to sustain the judgment of the trial court, and to that decision we still adhere. We have not the shadow of a doubt as to the correctness of the conclusion then reached. Men cannot be elected to fill the office of judge for a longer time than the term of the office itself, as fixed by the law in force at the date of the election. Neither can the legislature extend the term of the existence of a court, and then name those who shall be judges for the term so extended. Still less can the legislature prevent the people from electing judges at the general or special election provided by law for that purpose.

Petition overruled.

Monks, C. J., and Jordan, J., are of opinion that a rehearing should be granted.

### DISSENTING OPINION.

JORDAN, J.—I am constrained to dissent from the conclusion reached by the majority of the court in this case, and will, briefly as possible, and without elaboration, state my reasons for dissenting. It is conceded, if I understand the position of counsel for the relator, and at least, it cannot be successfully denied, that in the absence of the provision limiting the life of the Appellate Court in the statute creating it, its existence would have been perpetual, subject only

to a legislative change, and under such circumstances, the tenure of the present judges, in accordance with the provisions of the same statute, which fixed the term of office and the beginning thereof, would have been four years from January 1, 1897. That the incumbent judges, under their election in 1896, would have held for a term of four years from the same date, had the legislature of 1895 repealed the limitation clause of the original act and prolonged the life of the court to January 1, 1901, as was done by the legislature of 1897, in the light of well settled principles, cannot be successfully controverted. The inquiry then, is, if this would have been the effect and operation of a change in the law made by the legislature prior to the election of the present judges, why must a different result follow because the limitation clause in question was repealed, and the life of the court continued or prolonged, under the act of 1897, which was passed and in force a month or more before the date upon which the existence of the court was to terminate as originally provided? That a legislature, in the absence of constitutional prohibition, may repeal, modify, or amend statutes enacted by itself or predecessor, is elementary. It is settled beyond controversy that when a section of an existing law is amended or changed, it ceases to exist, and the section, as amended, supersedes such original section and becomes incorporated in, and constitutes a part of the original act. *Blakemore* v. *Dolan,* 50 Ind. 194. Applying this well settled rule, it becomes evident that when the legislature of 1897 exercised the right to repeal the limitation section of the original act, and to change the time of the court's expiration from March 1, 1897, to January 1, 1901, all of which legislation, as it will be seen, occurred, and was in full force and effect before the life of the court had termi-

State, *ex rel.* Taylor *et al., v.* Mount *et al.*

nated, the law stood precisely as though the legislature had, in the first instance, declared that the court's existence should end on January 1, 1901, and certainly, under such circumstances, in view of the facts in this case, no successors to the present judges could be elected at the ensuing November election.

The fact that the incumbents had been elected and inducted into office prior to the passage and taking effect of the act of 1897, can make no material difference in regard to their status, for, when the change made by the last enactment is construed with the provision of the original act, which fixed the tenure of office at four years, and each provision is given its full force and effect, it must follow that the present judges would hold for a full term of four years provided the life of the court was prolonged for that period by legislative action. But the claim or contention is that the incumbent judges were only elected by the people for a term of two months, beginning January 1, 1897, and ending on the first day of March following, at which date the existence of the court was to terminate, and at that time, it is contended, their official functions ceased by virtue of the limitation clause, regardless of the act of the legislature in controversy, which repealed the tenure clause of the court and expressly extended the life of the court, and which act, as heretofore said, was in full force and effect at and prior to the date originally fixed for the expiration of the life of the court. Counsel for the relators seemingly press their argument to the extreme of insisting that vacancies in the offices of appellate judges occurred on and after March 1, 1897, and that the operation of the act in dispute authorized the Governor to fill such vacancies by appointment until the next general election, or, in other words, the contention is that the effect

of the amendatory law, by which the life of the
court was prolonged, was equivalent to the creation
of a new office. This argument is certainly strained
and can find support neither in reason nor law. Coun-
sel apparently confuse or confound the tenure of the
tribunal with the term of its judges. The legislation
of 1897 was not aimed at the term of the office, but
was directed at and affected the tenure of the court;
and this distinction should be observed. It in no
manner changed nor affected the provisions which
are contained in the act of 1891 and the amendatory
act of 1893, whereby the legislature expressly declares
that the term of each of the judges of the Appellate
Court shall be four years from the 1st day of Jan-
uary after their election. It is this legislative fiat,
as expressed in these previous laws, which operates
to make the tenure of the present judges four years
from January 1, 1897, in the event the court was so
long continued by authority of the legislature, and
not the provisions of the act of 1897, which expressly
declared that the life of the court should be prolonged
for four years from January 1, 1897. Neither can it
be maintained that the right of the present judges
to continue in office for four years must rest solely
upon the provisions contained in section 2 of the act
of 1897, upon which relators place so much stress,
which declared that the present judges of the court
shall continue to hold their offices during a term of
four years from January 1, 1897. This section is but
a repetition in effect of what the legislature had de-
clared in the previous acts of 1891 and 1893: This
section is surplusage and may be entirely eliminated
from the act, and the operation and effect of the legis-
lation prolonging the existence of the court, upon the
terms of the present incumbents, would be the same.

The argument or claim that the electors of the

State elected the present judges for a term of two months only and that no act on the part of the legislature could in any manner vary or change this result, is futile and devoid of merit. The people, when they voted at the election of 1896 for appellate judges, are at least presumed to have known the provisions of the law creating the Appellate Court, and also that the term of the judges, under its particular provisions, was four years, and could be for no longer, subject, however, to the tenure of the court as then fixed, or as it might be limited or fixed by the legislature of 1897, before the expiration of the original limit, and subject also to the right and power of the legislature to shorten or abridge the tenure of the judges elected. That the voters were presumed to have known the power with which the legislature was invested, in respect to both the prolongation of the life of the court, and the abridgment of the term of its judges after their election, is surely, in the light of the authorities, a well settled legal proposition. The Appellate Court is purely one of statutory creation, as authorized by the constitution, and subject only to the restrictions of the latter in three respects, namely, that the judges thereof, generally speaking, must be elected, and their term of office cannot exceed four years, and temporary vacancies occurring therein must be filled by the Governor until the next election. Aside from these constitutional restrictions, the office may be said to be wholly under the control of the legislature. The court can be made perpetual, or its existence limited, at the discretion of the legislature, or it, at any time, may abolish the office altogether. The tribunal is therefore completely within the power of the legislature, except so far as the constitution forbids that body to interfere. It could shorten the term of four years to one year or under,

or, if the tenure of the office, as originally fixed, was two years or under, the legislature could have lengthened the term to that of four years, and the judges elected and installed into office prior to such action of the legislature, would be affected by such change, and their tenure, as the case might be, would undoubtedly be subject to the abridgment or extension of the official term. This power or right of the legislature over officers of its own creation has been repeatedly recognized and affirmed by the decisions of this court. *State, ex rel.,* v. *Hyde,* 129 Ind. 296, 13 L. R. A. 79, and cases there cited; *State, ex rel.,* v. *Menaugh, ante,* 260; see, also, 7 Lawson's Rights and Remedies, section 3797.

Even though it be conceded that the term of the present judges was but two months, as relators assert, when they were elected and became incumbents of the office they would certainly be subject to either an abridgment of that term or to an extension thereof not over four years; and, as the limitation clause in question was changed and extended before the expiration of the two months, it certainly must be evident, in view of the authorities, that the term of the judges would be subject to that extension which, under the facts in this case, is within the constitutional restriction of four years; and upon this theory of the case the contention of the relators, that the election for appellate judges must be held at the ensuing election cannot be sustained.

The legislature, then, being invested with the power to extend the existence of a statutory office beyond its original limit, if this power is exercised during the life of the office, it will result in permitting the incumbent to continue in office for his full term as fixed by law, not exceeding four years, provided the life of the office has been so long continued by the

legislature.    In support of this proposition, in addition to the authorities above cited, see the following: 19 Am. & Eng. Ency. of Law, pp. 562m and 562n; *In re Bulger*, 45 Cal. 553; *In re Jordan*, 37 Minn. 174, 33 N. W. 778; *Wilcox* v. *Rodman*, 46 Mo. 322; *Bruce* v. *Fox*, 1 Dana (Ky.) 447; *Christy* v. *Board, etc.*, 39 Cal. 3; Paine on Elections, 100-101; *State* v. *McCracken*, 51 Ohio St. 123, 36 N. E. 941; *State* v. *Howe*, 25 Ohio St. 588; *Taft* v. *Adams*, 3 Gray (Mass.) 126; *Long* v. *Mayor, etc.*, 81 N. Y. 425; *State* v. *Neibling*, 6 Ohio St. 40. Paine on Elections, *supra*, in section 130, states the rule as follows:  "When a state constitution declares an office to be elective, it cannot be filled in any other mode than that prescribed in the constitution.  But where an office has been filled, in the mode prescribed in the constitution, the term of the incumbent may be extended, provided the entire term, when so extended, does not exceed the time limited by the constitution.  The incumbent, during the addition to his term, holds, not as the appointee of the legislature, but as an elected officer."  The case of *Bruce* v. *Fox*, *supra*, especially controverts the principal contention or argument of counsel for relators.  This case arose out of a controversy over the office of commonwealth attorney, each of the parties claiming the office.  Fox, the incumbent, held under the appointment of the governor, and Bruce claimed title through a subsequent appointment by the governor of the state.  The statute creating this office was limited in its operation to two years, after which, by its own limitation, it was to be no longer in force but, the constitution of the state of Kentucky provided that offices of the grade of the one in question should be held by the incumbent during good behavior.  Before the expiration of the two years, during which period the statute was to be operative, the legislature repealed the

limitation clause. Bruce, believing that the vacancy existed in the office, procured himself to be appointed by the governor to succeed Fox, but this appointment was not confirmed, as required, by the senate. Bruce demanded the right in court to qualify, and succeed Fox, which right the latter denied. The case being taken to the court of appeals, the contention of appellant there was, as it is in the case at bar, that the incumbent could not hold beyond the original term of the office, as fixed by the law creating it, and that, as soon as the two years' limitation expired, a vacancy in the office existed, which the governor was authorized to fill, the insistence being urged that the subsequent prolongation of the life of the office, by the legislature, did not operate to continue the then incumbent in office, for the reason that when he was appointed there was no office to be filled for a term longer than two years, and that Fox, the incumbent, was appointed with reference to the fact that the term could not extend beyond two years, and, consequently it could not be claimed that he was appointed for a longer term than two years. But the court denied this claim or contention of the appellant, Bruce, and decided that Fox was entitled to hold during good behavior, and so long as the office existed. The court in that case held that the prolongation of the life of the office by the legislature was not the creation of a new office, and that no vacancy existed by reason of the continuation of the office. In passing upon the question involved, the court, in the course of its opinion, said: "As the officer may, under the constitution, hold the office during good behavior and the continuance of the office, if the law had been repealed or been permitted to expire, he would have been out of office; but as it was neither repealed, nor permitted to expire, but was

continued in force by a subsequent statute, enacted prior to the time fixed for its expiration by its own terms, the officer still has the right to hold the office during good behavior and the continuance of the office. And he holds his office under the law which created it, and under which he was commissioned. *That law was not re-enacted or revived; but was only continued in force by an act which repealed so much of it as prescribed its own limitation.* The continuance of the law, and the consequent duration of the office, depend, not on the law itself, but altogether on legislative will, like all other offices of legislative creation. *The effect of the limitation was only that the office should continue for two years and no longer, unless the legislature should, in the meantime, repeal the law, or extend its operation for a longer term.* The office might not have continued two years, because the law might, in the meantime, have been repealed. It may continue indefinitely, or so long as the legislature shall deem expedient. *It cannot therefore, with any propriety, be denominated or considered an office for two years, or for any other definite period beyond which it cannot extend."* (My italics.)

The limitation of the existence of the Appellate Court, in the act creating it, may be said to be temporary. An act of the legislature may be temporary in some of its parts and permanent in others; and the authorities affirm that if a statute, temporary when enacted, is made permanent by a subsequent act, it is to be deemed permanent *ab initio.* Sutherland on Statutory Construction, section 136; 23 Am. and Eng. Ency. of Law, 155. It would follow, under these authorities and the facts in this case, that the repeal by the legislature of 1897 of the provisions of the original act, which limited the life of the court, would have alone resulted in making the existence of

the court permanent, *ab initio*, had there been no ex-pression of the will of the legislature to the contrary. The claim of the relators that, if the present judges continue in office for a term of four years, they will do so as appointees of the legislature, and not under an election by the people, is without merit. The su-preme court of California, in the case of *Christy* v. *Board, etc., supra,* in passing upon the powers of the legislature in relation to statutory offices, the official terms of which, under the constitution in that state, as in our own, could not exceed four years, said: "When the constitution declares an office to be elec-tive, it cannot, of course, be filled in any other mode than that provided by the instrument itself.  *  *  * But where an office has been filled in the method pre-scribed by the constitution, no reason is perceived why the legislature may not extend the term of the incumbent; provided the whole term, when extended, does not exceed the time limited by the constitution —section 7, Article XI, of which, provides that 'when the duration of any office is not provided for by this constitution, it may be declared by law, and if not so declared, such office shall be held during the pleas-ure of the authority making the appointment; nor shall the duration of any office, not fixed by this con-stitution, ever exceed four years.' An officer duly elected by the people, and holding his office for a term extended by the legislature within the constitutional limitation of time, cannot, in any just sense, be held to hold, not as an elected officer, but as an appointee of the legislature. It cannot be denied that he was elected to the office, and that he would not be the in-cumbent of it, except for his election. The people have exercised their constitutional right in selecting him for the office, and instead of thwarting the pop-ular will by appointing some one else, the legislature

State, *ex rel.* Taylor *et al. v* Mount *et al.*.

has rather ratified it by extending his term. . The duration of the terms of office, except as limited by the constitution, is a matter of purely legislative discretion. It may be diminished or extended at the will of the legislature, within those limits, and this power in no degree trenches on the constitutional right of the people to select the person who is to fill an elective office. The people select the incumbent of the office, but the legislature has the power to define the duration of the term, provided it is not fixed by the constitution, and is within the constitutional limitation of four years."

The principle asserted in *People* v. *Bull, supra,* under our constitution, which prohibits the legislature from fixing the term of a statutory office beyond four years, is not in point, or applicable to the question involved in the case at bar.   Under the constitution of New York, as it then stood, the power of the legislature to fix the term of an office of its own creation, appears to have been unfettered, and the holding in *People* v. *Bull, supra,* proceeds upon the theory that, if the power was conceded to the legislature to extend the term of an incumbent beyond that fixed prior to his incumbency, such power would be without limit, and the legislature could extend the term of an official so as to make the duration of his term, when once elected, permanent, and ever after thereby deprive the people of choosing his successor.   It will readily be seen that, under the constitution of this State, such evil results cannot follow an extension by the legislature of the term of an office.   This body, under our constitution, is authorized, in the first instance, to fix the term at four years and no longer.   If the term of a statutory office is originally fixed for a term under four years, the legislature certainly has the power,

State, *ex rel.* Taylor *et al.*, *v.* Mount *et al.*

as our own decisions in effect affirm, to subsequently extend it to the maximum of four years, regardless of the fact that such extension may result in keeping an incumbent in office beyond the original term. Without further consideration of the question, I am of the opinion that there can be no election, under the law, for appellate judges at the ensuing November election, and that the judgment below, denying the right of the relators to have their names placed upon the official ballot, is right and ought to be affirmed. Monks, J., concurs.